## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

FEDERAL INSURANCE COMPANY,

Plaintiff,

v.

FIREMEN'S INSURANCE COMPANY
OF WASHINGTON, D.C., *et al.*

Defendants.

Action No. 08:09–CV–2361—AW

---

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Plaintiff Federal Insurance Company's Motion for Summary Judgment (Doc. No. 29); the Netherlands Insurance Company's Cross Motion for Partial Summary Judgment (Doc. No. 38); and Firemen's Insurance Company's Cross-Motion for Summary Judgment (Doc. No. 39). The parties have fully briefed these Motions, and the Court deems that no hearing is necessary.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case was filed on September 9, 2009. The matter arises out of a dispute between Plaintiff Federal Insurance Company, Defendant Firemen's Insurance Company of Washington, D.C., and the Netherlands Insurance Company, regarding each insurer's obligation to provide insurance coverage for a suit against mutually insured entities, Case Design and its subsidiary, Case Handyman. Case Design is a Maryland Corporation that provides home remodeling services. Case Design operates under the service mark, "Case Handyman." The business has insurance policies with the Plaintiff Federal Insurance Company ("Federal"), Defendant

Firemen's Insurance Company of Washington, D.C. ("Firemen's), and Defendant The

Netherlands Insurance Company ("Netherlands").[1]

### a. Hammerash Arbitration

Directly relevant to the suit at bar, on October 15, 2003, Case Handyman and Shaun

Arnold (principle of Professional Home Repair ["PHR"] d/b/a Case Handyman Service), entered

into a franchise agreement which allowed PHR to conduct business as a franchise of Case

Handyman.   Furthermore, the franchise agreement gave PHR a license to use the Case

Handyman service mark and logo.   One condition of the agreement was that PHR name Case

Handyman as an additional insured under PHR's commercial general liability policy.

According to Federal, Case Handyman LLC was added as an additional insured under the

Netherlands Policy, pursuant to the Commercial General Liability Extension Endorsement.

On July 28, 2006, William Hammerash and his wife entered into two contracts with PHR.

The first contract was for an addition to the Hammerash's home, and the second contract was for

the construction of a garage.   Subsequent to the performance of the contracts, in a letter to PHR,

Mr. Hammerash expressed his dissatisfaction with the performance of PHR's work, alleging that

he had "sustained damages while being a client of . . . PHR."[2]   To get redress for the defective

work performed, Hammerash instituted an arbitration against Case Design/Remodeling, Inc, t/a

Case Handyman Services on October 5, 2007.   An amended complaint filed on March 25, 2009

named Case Design and Case Handyman as the respondents.   The amended complaint alleged

---

[1] The Court notes that the Netherlands challenges the issue of whether they insure Case Design.  The Court will address this issue herein.

[2] Federal alleges that the damages complained of included "(1) damage caused to portions of Hammerash's home exposed to the weather and damages to an outdoor storage unit due to the failure to properly blockade the job site; (2) damage to the root structure of several trees on the property, caused by the negligent placement of dirt from the excavation performed at the job site; (3) damage to the driveway  on the property, also caused by the negligently-placed dirt on the job site; (4) damage to lumber purchased by Hammerash, which was improperly left uncovered; (5) damage to azalea bushes on the property caused by an improperly covered; (5) damage to azalea bushes on the property caused by an improperly-placed dumpster; and (6) destruction of several lawn chairs caused by the collapse of the deck."  (Doc. No. 29-1, at 8).

that Case Handyman's failure to perform their work in a professional and workmanlike manner had caused Hammerash $150,000 worth of damages.

In the course of the arbitration, Case Design submitted the arbitration to their insurance carrier, Federal. Federal purportedly paid $197,477.64 defending Case Design in the Hammerash Arbitration. According to Federal, their policy with Case Design gave them the right to seek recovery by way of subrogation, and/or contribution from other insurance carriers with whom Case Design had policies covering relevant losses. According to Federal, Firemen's Insurance Company and the Netherland's Insurance Company are obligated to cover the Hammerash Arbitration as primary insurers, pursuant to the "other insurance" provision in their respective policies, allegedly making Federal's coverage excess to the primary coverage of the Netherlands and Firemen's.[3] In other words, Federal contends that they are only obligated to cover the Hammerash arbitration after the Netherlands and Firemen's has provided coverage up to their liability limits of $1 million, which did not occur in this case, as the suit did not reach the $1 million liability limit. However, both Firemen's and Netherlands denied coverage to Case Design for the arbitration. In the instant motion, Federal seeks declaratory judgment, declaring that Federal's coverage is excess to the coverage provided by Netherlands and Firemen's and that the defendant companies have the primary responsibility of covering the defense costs incurred with the Hammerash Arbitration. Both the Netherlands and Firemen's have filed cross motions for summary judgment. Firemen's seeks a declaratory judgment that Firemen's owes no duty to defend Case Design or provide coverage in the Hammerash Arbitration and that its coverage for Case Design is excess to the Netherlands. The Netherland's seeks a declaratory judgment specifying that Federal is not entitled to indemnity from the Netherlands and that

---

[3] Both the Netherlands and the Firemen's policies

Federal must contribute to the defense of the Hammerash arbitration on an equal basis with the Netherlands and Firemen's.

### a. The Federal Insurance Company Policy

Case Design entered into an insurance policy with Federal Insurance Company (Policy No. 6803-7657), which covered a period from October 1, 2006 to October 1, 2007.   According to Plaintiff, the Federal Policy covered,

> Loss on behalf of the Insured Organization resulting from any Insured Organization Claim first made against the Insured Organization during the Policy Period, or any applicable Extended Reporting Period, for Wrongful Acts.   The term "Insured Organization" was defined to include Case Design and its subsidiaries.  The term "Insured Organization Claim" is defined to include in relevant part any written demand for monetary damages or non-monetary relief and/or any civil proceeding commenced against an "Insured Organization" for a "Wrongful Act." The term "Loss" is defined to include "Defense Costs" incurred in connection with a "Claim."
> (Doc. No. 29-1, at 3, citing Doc. No. 29-4 (Federal Policy) (internal citations omitted)).

At issue in this case is the "Other Insurance" clause featured in the Federal Policy. According to Federal, the "Other Insurance" clause states, that if "any Loss under this Coverage Section is insured under any other valid and collectible insurance policy(ies), prior or current, then this Coverage Section shall cover such Loss . . . only to the extent that the amount of such Loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Coverage Section." (Doc. No. 29-1, at 4).   Federal alleges that Firemen's and the Netherland's are "other insurance" covering the claims at issue in this dispute.   As such, Federal contends that it has no duty to defend the claims at issue in this suit because Federal only provides "excess" coverage for amounts not covered by the defendant insurers.   It is this clause that Plaintiff alleges

warrants contribution or indemnification from the Netherlands and Firemen's for the arbitration of Case Design that Federal covered.

### b.  The Firemen's Insurance Company Policy

Case Design was covered by other insurers, including Firemen's and Netherlands.  The Fireman's Insurance Policy purportedly covered in relevant part,

> [A]ll amounts that the "insured" becomes legally obligated to pay because of "bodily injury," "property damage" or personal and advertising injury" which is caused by an occurrence during the policy period.  The term "insured" was defined to include Case Design and Case Handyman.  The term "property damage" was defined to include "[p]hysical injury to tangible property, including all resulting loss of the use of that property" as well as "loss of use of tangible property that is not physically injured."  The term "occurrence" is defined to include an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Doc. No. 29-1, at 4).

Plaintiff alleges that the Firemen's policy additionally contained a provision which stated that Firemen's had the right and duty to defend an insured party against any "suit" seeking damages for bodily injury, property damage, or personal injury.  *Id.* Plaintiff avers that "suit" was defined to include arbitrations.  Moreover, Plaintiff avers that the Firemen's Policy also contained an "Other Insurance" clause.   However, this clause was apparently unlike the "Other Insurance" clause in the Federal Policy, as it did not cover "excess" but was intended to serve as the primary insurer, except in certain situations.   *Id.*  The "Other Insurance" clause states:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> b.  Primary Insurance
>     This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.
>
> c.  Excess Insurance
>     This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, or contingent or on any other basis:
   (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";
   (b) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;
   (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
   (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of SECTIOPN I COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

### d. The Netherland's Insurance Company Policy

Finally, Plaintiff avers that Case Handyman was covered by one other additional insurer—the Netherlands Insurance Company (Policy No. CCP8189978). According to Plaintiff, the Netherlands insured Professional Home Repair ("PHR") who was doing business as Case Handyman Service. This policy covered a period from August 1, 2006 to August 1, 2007. Plaintiff avers that the Netherlands policy covered,

"[A]ll amounts that the "insured" becomes legally obligated to pay because of "bodily injury," or "property damage" which occurs during the policy period and which is caused by an "occurrence."

(Doc. No. 29-1, at 6).

Plaintiff avers that the term "insured" under the Netherland's Policy was later expanded to incorporate "any person or organization when you and such person or organization have agreed in writing in a contract, agreement or permit that such person or organization be added as an additional insured on your policy. . . ." (Doc. No. 29-1, at 6, citing Doc. No. 29-6, at 78). The Netherland's Policy provided that the insurer would defend the insured against any suit, which included arbitrations, according to Plaintiff.

The Netherland's Policy contained an "Other Insurance Clause," which mirrors the language in the Fireman's Policy.[4]

The Netherland's policy had a liability limit of $1 million per occurrence.

## II.    STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31

---

[4] The Netherland's "Other Insurance" Policy is identical to the language in the Fireman's Insurance Policy, stating,

   **(2)**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

   When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   **(1)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   **(2)**  The total of all deductible and self-insured amounts under all that other insurance.

   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

(4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).  "It is well established in Maryland that insurance policies are construed like other contracts." *Litz v. State Farm Fire & Cas. Co.,* 346 Md. 217, 224, 695 A.2d 566 (1997). "When determining coverage under an insurance policy, 'the primary principle of construction is to apply the terms of the insurance contract itself.' " *Bausch & Lomb, Inc. v. Utica Mutual Insurance Co.,* 355 Md. 566, 581, 735 A.2d 1081 (1999) ( *Bausch & Lomb II* ) (citation omitted). "In doing so, we ascertain the parties' intentions from the policy as a whole." *Id.* "In construing the terms of the insurance contract, unless 'there is an indication that the parties intended to use words in the policy in a technical sense, we accord the words their usual, ordinary, and accepted meaning.' " *Id.* "When the terms of a contract are ambiguous, courts look to extrinsic sources to ascertain the meaning of the terms." *Mamsi Life & Health Ins. Co.,* 375 Md. at 279, 825 A.2d 995. "If the terms are unambiguous, the court may construe the language as a matter of law." *Id.*

Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. *Costelo v. Chertoff* , No. SA08-00688-JVS(SHx), 2009 WL 4030516, at *1,  (C.D. Cal., Nov. 10, 2009) (internal citations omitted).

### III.    ANALYSIS

The parties in this matter dispute the extent of the insurance coverage they were obligated to provide to Case Design for an arbitration that the company underwent (the Hammerash Arbitration).  According to Federal, pursuant to the insurance policies entered into by Case Design with the defendant companies in this case, both the Netherlands and Firemen's are

obligated to contribute to the defense of and provide coverage for the Hammerash Arbitration. However, these companies have denied coverage to Case Design for the Hammerash Arbitration.

Maryland courts have outlined the manner in which courts should assess whether an insurer has a duty to provide coverage to an insured for certain risks. "In determining whether a liability insurer has a duty to provide its insured a defense in a court suit, two... questions ordinarily must be answered: (1) What is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) Do the allegations in the court action potentially bring the claim within the policy's coverage?" *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 483 A.2d 282 (Md. 1991). "A court must ascertain the scope and limitations of coverage under the... insurance policy and then determine whether the allegations in the [underlying] action would potentially be covered under the policies." *Utica Mutual Insurance Co. v. Miller*, 130 Md. App. 373, 746 A.2d 935 (Md. Ct. Spec. App. 2000).

### a. Netherlands' Obligation to Insure Case Handyman and Case Design in the Hammerash Arbitration

As a threshold matter, the Court must first resolve the issue of whether Case Design, the entity named in the Hammerash Arbitration, is insured under the Netherlands' policy. The Netherlands and Federal dispute which business entities they are obligated to provide insurance for, as the Netherlands alleges that Case Handyman *and* Case Design are covered under the Federal Policy, while only Case Handyman is covered under the Netherlands' policy. While Federal concedes that Case Design is not listed as an insured under the Netherlands' policy, Federal advances that Maryland law requires the Netherlands to provide coverage to Case Design related to the Defense of the Hammerash Arbitration. (Doc. 44, at 2). Federal asserts that the Netherlands is obligated to provide coverage to Case Design "in its entirety because all of the defense costs are related to the defense of Case Handyman, which indisputably is a Netherlands' insured." *Id.*

The Court finds that Federal's position is supported by established precedent holding that "[i]f the complaint contains both potentially covered and non-covered claims, the insurer must defend the entire suit." *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 395 (5th Cir. 1995)(citing *Hartford Casualty Company v. Cruse,* 938 F.2d 601, 603, 605 (5th Cir.1991)). With facts similar to the ones in this case, in *Hartford Casualty Insurance*, Hartford Casualty Insurance provided comprehensive general liability insurance to Lefarge Corporation. Anchor Wate, Lefarge's wholly owned subsidiary, entered into a joint venue with several other companies for the construction of a pipeline for All American Pipeline Company, resulting in litigation for defective workmanship. *Id.* at 391. The plaintiff in the litigation against Anchor Wate eventually named Lefarge as a defendant in the litigation, alleging negligence. *Id.* at 392. According to the Plaintiff, Anchor Wate was the "alter ego" of Lefarge, and hence liable for the negligence of its subsidiary.

Under the Hartford policy, "coverage for injuries arising out of uninsured joint ventures in which the insured participated" were explicitly excluded. *Id at* 395. Hartford sought a declaratory judgment from the district court that it had no duty to defend or indemnify its insured, Lefarge, for claims brought against both the insured and its subsidiary since the litigation arose out of the subsidiary's participation in a joint venture, which was explicitly excluded coverage under the policy. *Id.* However, despite this blatant exclusion, the Court found that Hartford was obligated to provide liability coverage to defend the litigation because "the complaint contain[ed] both potentially covered non-covered claims, the insurer must defend the entire suit." *Id.* at 395 (citing *Hartford Casualty Company v. Cruse,* 938 F.2d 601, 603, 605 (5th Cir.1991)). In the case at bar, despite the fact that Case Design may have not been named as an insured under the Netherlands policy, the holding of *Lafarge Corp,* and numerous other cases clearly support the proposition that an insurer must defend the *entire* claim, notwithstanding the

existence of uncovered claims which are mentioned in the complaint. *See Hartford Acc. and Indem. v. Sherwood Brands, Inc.,* 111 Md. App. 94, 106 (1996); *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.,* 330 Md. 758(1993) (insurer must defend insured if it appears from complaint that there is potential for liability under the policy).

Therefore, while Case Design may not be a covered entity under the Netherlands policy, the fact that this entity was named in the Hammerash Arbitration does not provide an absolute shield to the Netherlands from their obligation to defend Case Handyman in the Hammerash arbitration. Though the claims against Case Design may be uncovered under the Netherlands policy, there is a possibility that claims against Case Handyman (indisputably insured by the Netherlands) are covered, thus triggering the Netherland's obligation to defend the entire suit.

### b. Federal's "Other Insurance" Clause

A review of the record in this case clearly demonstrates that Federal, the Netherlands, and Firemen's insurance provided insurance coverage to some extent to Case Handyman. Federal alleges that its insurance policy with Case Design contained an "other insurance" which obligated the Netherlands and Firemen's to provide the primary coverage to the insured, while Federal only provided "excess" coverage when the insurance providers were all covering the same claim. In the case at bar, Federal argues that the Hammerash Arbitration relates to claims for which the Netherlands and Firemen's are obligated to provide coverage, and thus Federal has no duty to defend because its coverage is excess to claims over $1 million. Each party's motion for summary judgment will be address *seriatim.*

According to the Netherlands, Case Design was not insured by their company, as only Case Handyman was listed as an additional insured under the Netherlands policy. This argument has already been addressed above. Moreover, the Netherlands argues that it is not obligated to defend the Hammerash Arbitration, as this arbitration is solely covered under the

Federal policy.   The Netherlands policy limits coverage to claims arising from accidental bodily injury and property damage, categories into which the Hammerash Arbitration does not fall. Instead, the Netherlands asserts that "the claims in the Amended Complaint arise solely from allegations that Case Design and Case Handyman failed to perform work which they had been contacted and paid to perform and from allegations that the work they did perform was not performed properly and/or up to industry standards."   (Doc. No. 38-1, at 6).  These allegations, according to the Netherlands do not trigger coverage for the risks that the Netherlands covers— property damage and accidental bodily injury.

The Netherlands argues that the coverage provided by Federal is much broader than the coverage provided by Case Design.  The Federal policy covers "wrongful act[s]," constituting, "any error misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted…." (Doc. No. 38-1, at 5). Accordingly, the Netherlands additionally asserts that the "other insurance" provision of the Federal policy "applies when two or more insurance policies cover '***the same risk*'** for the same person." (Doc. No. 38-1, at 8)(emphasis in original), citing *Med. Protective Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 25 F. App'x 145, 149 (4th Cir. 2002).   As a basis for their argument that the Netherlands is not legally obligated to provide insurance coverage to Case Design, the Netherlands alleges that the Federal and Netherlands policies do not provide coverage for the same risks, and therefore, the "other insurance" provision of the Federal policy does not require the Netherlands to serve as the primary insurer for Case Handyman.  The Netherlands  policy's general liability coverage provision outlined the coverage they provide as follows:

1.    Insuring Agreement

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

   investigate any "occurrence" and settle any claim or "suit" that may result.

   b.    This insurance applies to "bodily injury" and "property damage" only if:

      (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

The Netherlands notes that an "occurrence" as defined in their policy is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. No. 38-1, at 3). Relevant to the case at bar, the Netherlands' policy defined property damage as follows:

"Property Damage" is defined as follows:

   17.    "Property damage" means:

      a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The Commercial General Liability Extension Endorsement states:

I. ADDITIONAL INSUREDS – BY CONTRACT, AGREEMENT OR PERMIT

> Paragraph 2. under **SECTION II – WHO IS AN INSURED** is amended to include as an insured any person or organization when you and such person or organization have agreed in writing in a contract, agreement or permit that such person or organization be added as an additional insured on your policy to provide insurance such as is afforded under this Coverage Part. Such person or organization is an additional insured only with respect to liability arising out of:
>
> a. Your ongoing operations performed for that person or organization;

The Netherlands maintains that the Hammerash Agreement "does not include claims or allegations of property damage or bodily injury as those terms are defined in [t]he Netherland's policies. Instead the claims in the Amended Complaint arise solely from allegations that Case Design and Case Handyman failed to perform and from allegations that the work they did perform was not performed properly and/or up to industry standards." (Doc. No. 38-1, at 6). While the formal complaint to the arbitration only indicates three counts—breach of contract, negligence, and a violations of the Maryland Consumer Protection Act—a letter from Mr. Hammerash (the complaintant in the Hammerash Arbitration) to PHR indicated the specific damages that had resulted from PHR's work. Federal aptly categorizes the category of damages mentioned in Hammerash's letter, and the parties do not dispute this categorization. The damages alleged in the letter consisted of the following:

(1)     Damage caused to portions of Hammerash's house exposed to the weather and Damages to an outdoor storage unit;
(2)     Damage to the root structure of several trees on the property;
(3)     Damage to the driveway on the property;
(4)     Damage to lumber purchased by Hammerash;
(5)     Damage to azalea bushes on the property; and
(6)     Destruction of several lawn chairs;

(Doc. No. 29-11, at 5).

The parties' briefs dispute which allegations—the allegations in the arbitration complaint versus the allegations in the Hammerash letter to PHR—should guide the Court's analysis of the claims made in the Hammerash Arbitration. Consistent with Maryland law, the Court finds that it can refer to extrinsic evidence, such as the Hammerash letter to Case Design, to determine which claims are potentially covered by the insurers in this dispute. As a basis for the Court's conclusion, the Court finds the holding in *Aetna Cas. Sur. Co. v. Cochran*, 337 Md. 98, 11-12(1995) persuasive. In *Aetna*, the Court held that "an insured may establish a potentiality of coverage under an insurance policy through the use of extrinsic evidence" provided that the parties were not using such evidence to "assert a frivolous defense merely to establish a duty to defend on the part of his insurer. Only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial can evidence to support the insured's assertion be used to establish a potentiality of coverage under an insurance policy." *Id.* at 112. In the case at bar, the allegations in the Hammerash letter are being used to establish the potentiality of coverage under the insurance policies at issue in this case. Moreover, there is no indication from the record that the evidence is being used to assert a frivolous defense. Finally, the claims in the letter that potentially trigger coverage will certainly be litigated were this case to go to trial. Therefore, the Court will consider the claims made in the Hammerash letter to PHR to determine which allegation trigger coverage from the parties in this dispute.

Finding that the Court can use the allegations made in the letter to determine the claims giving rise to the Hammerash Arbitration, the Court will now determine whether the Netherlands and the Federal Policy covered the same risks, thus triggering the "other insurance" clause of the Federal policy and making Federal's coverage excess to the Netherlands. Federal alleges that the Netherlands provides coverage for "property damage" and "bodily injury," and these risks are the same risks covered by Federal's policy with Case Design. *See generally* Doc. No. 29-1,

at 6.  Reviewing the policies at issue in this case, it is clear that Federal and the Netherlands cover a mutually insured party under two different types of polices.   Relevant to this case, Federal covers Case Design under a Directors and Officers Liability ("D&O") policy, and the Netherlands covers the insured under a Commercial General Liability Policy (Doc. 29-6, at 14).  A review of the insurance policies at bar demonstrate that the insurance providers were covering the insured for different risks.

The Netherlands aptly cites *Pacific Indemnity Co. v. Linn,* 766 F.2d 754 (3rd Cir. 1985) for the proposition that insurance policies that provide professional liability coverage were not "other insurances" to policies that provided commercial general liability coverage.  (Doc. No. 38-1, at 9).   The Court held,

> Here, Pacific and JUA provided coverage to Dr. Linn for professional liability, *i.e.,* liability for professional services rendered or which should have been rendered by the insured in the practice of the insured's profession. Therefore, the district court properly held that they are "other insurance" as to each other. Aetna's primary policy, on the other hand, provided commercial general liability coverage for occurrences resulting in bodily injury or property damage and insured against a risk distinct from the professional liability covered by the Pacific and JUA policies.
>
> 766 F.2d 754 at 767.

Federal has not responded to this analogous case in their reply brief.   The Court's review of the insurance policies at issue in this case demonstrate that the Netherlands' policy was a General Commercial Liability Policy, while Federal covered the insured for Directors and Officers Liability, policies that covered for different risks, hence failing to trigger the "other insurance" provision of the Federal policy which would make Federal's coverage excess to the Netherlands'.

Additionally, the Court finds the Netherlands' interpretation of *Fieldston Property Owner Assn'n, Inc. v. Hermitage Ins. Co, Inc*., 873 N.Y.S. 2d 607 (2009) persuasive. In that case, Hermitage Insurance Company issued a Commercial General Liability Policy to Fieldston Property Owners. *Id.* at 608. Federal Insurance Company also insured Fieldston under a Directors and Officers Liability Policy. Federal alleged that the D&O policy was excess to the Hermitage policy. *Id.* at 609. The Court found that the "other insurance" clause was not triggered because that clause only applied "where a loss is insured under both the D&O policy and another 'valid policy.'" *Id.* The Court found that at least some of the claims asserted in the defense of the insured were certainly covered by Federal's D&O policy. However, there was only one possible claim that was covered under Hermitage's policy. *Id.* The Court therefore found that the parties did not insure for concurrent risks, and "[a]ccordingly, the 'other insurance' clause is inapplicable to the risks of all other such losses, and the D & O policy thus provides primary coverage with respect to some of those risks." *Id.* at 611.

Taking this ruling into account, the Court finds that the Netherlands and the Federal policies insure different risks. Therefore, the "other insurance" clause is inapplicable in this case, and Federal's insurance is not "excess" to the Netherlands' insurance coverage for Case Handyman. This, however, does not end the Court's inquiry. Notwithstanding the Court's finding that Federal's coverage is not "excess" to the Netherlands' coverage, the Court must still determine whether Federal is entitled to contribution from the Netherlands.

### c. "Occurrences" under the Firemen's and Netherlands' Policies

Firemen's alleges that they are only obligated to provide coverage to property damage or bodily injuries for acts which constitute an "occurrence" under their respective policies. The Firemen's policy defines "occurrence" as follows: "an accident, including continuous or repeated

exposure to substantially the same general harmful conditions." Firemen's Policy at Section

V(13), p. 000170, Doc. No. 29-1, Ex. 4. The Netherlands policy contains a similar provision,

which provides that the company will cover the insured for "bodily injury" or "property damage"

caused by an "occurrence." Netherlands Policy at Section I(1)(b)(1), p. 0255, Doc. No. 29-1,

Ex.5. "Occurrence" is identically defined in the Netherlands and the Firemen's policies. In

*Mutual Benefit Group v. Wise M. Bolt Company*, 227 F.Supp. 2d 469, 475 (D. Md. 2002), the

court interpreted the meaning of "occurrence" in a policy defining the word in the same way the

word is defined in the policies at bar. In *Bolt*, like in this case, the insurer alleged that they were

not obligated to defend the insured for a suit relating to the satisfaction of a contract between

Bolt, the insured, and Bolt's client. The critical question in determining whether an insurer's

obligation to defend is triggered because of an "occurrence" is whether the alleged damage was

expected or foreseeable. However, the *Bolt* court conclusively held that "[i]f the damages

suffered relate to the satisfaction of the contractual bargain, it follows that they are not

unforeseen. In other words . . . it should not be unexpected and unforeseen that, if the building

delivered does not meet the contract requirements of the sale, the purchaser will be entitled to

correction of the defect." *Id.* at 476. Therefore, the damages related to PHR's construction of

the Hammerash home and garage were not unforeseeable, as they related to the satisfaction of

Hammerash's contractual obligation to satisfactorily perform the contract. However, the *Bolt*

court noted that "damage to property other than the insured's work or product would be

'unexpected' and, thus, caused by an occurrence." *Id.*

Therefore, the damages to the property other than the home and garage are potentially not

"occurrences" as defined in the policies at issue. The Court will address the damage to the other

property in the Court's analysis of the Firemen's and Netherlands' policy exclusions. However,

at this juncture, the Court finds that damages resulting from the satisfaction of the contract

between PHR and Hammerash are not occurrences, and therefore, do not trigger coverage under the Firemen's or the Netherlands policies. Firemen's concedes that "the portions of Hammerash's house that were allegedly damage[d] and the outdoor storage unit constitute real property on which the insured was performing operations." (Doc. No. 39-1, at 14). The Court agrees with this assertion and finds that the Firemen's and Netherlands is not obligated to cover work for damages to these areas.

### d. Exclusions

The parties heavily dispute whether certain exclusions in the insurance policies bar the defendant companies from providing coverage for the Hammerash Arbitration. However, there is no dispute that both the Netherlands and the Firemen's policies covered liability for bodily injury and property damage, subject to certain exclusions.

Firemen's asserts that its policy provided the following coverage for:

[S]ums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We [Firemen's] will have the right and duty to defend the insured against any "suit" seeking those damages.

(Doc. No. 39-1, at 8, quoting Fed. Ex. 4, p. 000157).

Very similar to the Firemen's policy, the Netherlands policy covers the following:

[S]ums that the insured becomes obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

. . . .

This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

(Doc. No. 38-1, at 2-3).

Both defendant insurers point to several exclusions in their respective policies which allegedly relieve them from their obligation to defend the Hammerash Arbitration.    Each policy's exclusions will be addressed *seriatim*.   The parties do not dispute that only the Federal policy insures suits against "suits."  However, the parties do contest whether the alleged property damage at issue in the Hammerash Arbitration triggers the Firemen's and Netherland's obligations to defend the Hammerash Arbitration.

Federal highlights that the "Netherlands has relied upon the 'your work' exclusion in its Policy, which bars coverage in relevant part for 'property damage' to:

> (5) That particular part of real property on which you [PHR] or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damages' arises out of those operations; or

> (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

> Netherland's Policy at Section I(2)(j)(5)(6), NETH 0259, Doc. No. 29-1, Ex.5.

The Court notes that Firemen's has a similar exclusion, under the "Damage to Property" exclusion provision of their policy.  Pursuant to the "Damage to Property" exclusion, coverage is excluded for "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or [t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." (Doc. No. 29-5, at 161; Firemen's Insurance Policy, p. 000160).   The "Damage to Property Exclusion," of the Firemen's policy appears to be nearly identical to the "your work" exclusion in the Netherlands policy, and thus, the Court will address both exclusions together.

Federal asserts that that the "your work" exclusion to property damage in the Netherlands policy is inapplicable to this case because "the Hammerash Arbitration is <u>not</u> limited to 'property

damage' on which PHR was to perform work . . . . Instead, the Hammerash's allege damages to <u>other</u> areas of their property, including damages to their trees, bushes and driveway, that was allegedly caused by PHR's negligence."  (Doc. No. 29-1, at 19).

The basis of Federal's claims that the "your work" exclusion does not apply to this case is that the Hammerash letter alleges damage to property that includes not only the addition to their house and garage (the portions of the house on which PHR was performing work), but also damage to their trees, bushes, driveway and furnishings—property that purportedly is not subject to work performed by PHR.  Federal directs the Court to *Limbach Co. LLC v. Zurich American Ins. Co*., 396 F.3d 358, 365 (4th Cir. 2005) to give the Court direction on the Fourth Circuit's interpretation of the "your work" exclusion.  Federal cites *Limbach* for the proposition that "by its plain language, the 'your work' exclusion only excludes coverage for damage to an insured's work that arises out of the insured's faulty workmanship.  It does not exclude coverage for damage to a third party's work."  In the case at bar, no third party exists which would trigger this exclusion.  Therefore, *Limbach* is inapposite to the case at bar.

Federal also directs the Court to *Harbor Court Associates v. Kiewit Construction Company*, 6 F.Supp. 2d 449, 460 (D. Md. 1998) and *Mutual Ben. Group v. Wise M. Bolt Co., Inc.,* 227 F.2d 469 (D. Md. 2009) for the proposition that the "your work" exclusion only applies to property subject to "work performed" on the property at issue, and hence does not apply to property damage not subject to work performed, such as the trees, bushes, driveway, and furnishings at issue in the Hammerash Arbitration.   The Court has reviewed the cases cited in the pleadings and finds that several allegations alleged in the letter giving rise to the Hammerash Arbitration do in fact support a finding that certain damaged property was not subject to work performed by Case Design.  The allegations in the Hammerash Letter clearly demonstrate that the property damage to the trees, azaleas, driveway, lumber, and furnishings was consequential

to the work performed by Case Design.  The Court finds *Bolt* particularly instructive.  In *Bolt*, the plaintiff, Mutual Benefit Group, alleged that they had no duty to defend their insured, Bolt, for a suit brought against Bolt for their faulty construction of a home for a client.  The client alleged not only property damage to the home, but also property damage to other property, the client's furnishings and the client's pantry.  227 F. Supp.2d at 476.  The Court concluded that the "your work" exclusion did not apply to this case because the product at issue in *Bolt*, like the product or work at issue in the case at bar, was the construction of the home.  *Id.* at 478.  The "your work" exclusion was inapplicable to the case because the allegations against Bolt included damage to property other than the home.  In this case, the damage to Hammerash's property also included damage to property other than the home, and therefore, the "your work" exclusion does not bar coverage for damages to the trees, azaleas, driveway, lumber, and furnishings that were damaged.  Thus, the "your work" exclusions in the Netherlands and the Firemen's policies do not operate to bar coverage for the Hammerash arbitration.  As stated above, "[i]f the complaint contains both potentially covered and non-covered claims, the insurer must defend the entire suit."  *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 395 (5th Cir. 1995)(citing *Hartford Casualty Company v. Cruse,* 938 F.2d 601, 603, 605 (5th Cir.1991)).  Thus, having found that the Netherlands and Firemen's policies do not exclude coverage for property damage not subject to work performed by PHR, the Court finds that the defendant insurers are obligated to provide coverage for the Hammerash Arbitration.

### e.  Firemen's "Other Insurance Clause"

Firemen's alleges that their policy is excess to the Netherlands policy, and hence they have no duty to defend the Hammerash Arbitration.  (Doc. No. 39-1, at 1).  Firemen's asserts that the "other insurance" clause in the Firemen's and Netherlands policies are substantially the same.  (Doc. No. 39-1, at 26).  The other insurance clauses at issue are similar to the Federal

"other insurance" clause already discussed. Both the Firemen's and the Netherlands policies provide that their insurance will serve as primary unless certain exceptions apply. *See* Firemen's Policy, p. 00167, Doc. No. 29-1, Ex. 4; Netherlands' Policy, p. 0267, Doc. No. 29-1, Ex.5. While Firemen's acknowledges that its other insurance clause is nearly identical to the Netherlands' clause, Firemen points to the Court to one dispositive exception in their clause which states:

> This insurance is excess over:
> . . .
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Firemen's asserts that the Netherlands added Case Handyman as an "additional insured" via an endorsement to the Netherlands' policy. The record in this case clearly demonstrates this fact. *See* Doc. No. 29-8, at 2. The Netherlands has not responded to this argument, but the Court finds that plain language of the Firemen's policy clearly demonstrates that the Firemen's policy is excess to the Netherland's policy, as Case Handyman was added as an "additional insured" under the Netherland's policy, triggering the exclusion to coverage in the Firemen's policy. Therefore, Firemen's has no duty to defend the Hammerash Arbitration.

## CONCLUSION

In Conclusion, the Court **GRANTS in PART and DENIES in PART** Federal's Motion for Summary Judgment, finding that Federal's policy is not "excess to" the Netherland's policy but that Federal is entitled to contribution from the Netherlands for their defense of the Hammerash Arbitration. The Netherlands' Cross Motion for Summary Judgment is

**GRANTED in PART and DENIED in PART**, with the finding that the Netherlands is not required to indemnify Federal but must contribute to the defense costs of the Hammerash

arbitration.[5]  Firemen's Cross Motion for Summary Judgment is **GRANTED**, as Firemen's policy is excess to the Netherlands, and Firemen's has no duty to defend the Hammerash Arbitration.   Firemen's is hereby **TERMINATED** as a party to this litigation.   The Court requests further briefing from Federal and the Netherlands on the issue of the specific amount that should be awarded to Federal for the defense of the Hammerash Arbitration.   A separate Order will follow.

Date:   <u>February 9, 2011</u>                           _____/s/_____

                                                    Alexander Williams, Jr.
                                                    United States District Court

---

[5] The Court takes note of the Netherland's assertions that to the extent that they had a duty to defend the Hammerash Arbitration, their duty ended when CDR and Case Handyman's Motion for Summary Judgment in the Hammerash Arbitration was granted.  The Court will assess this argument when it receives further briefings from the parties on the contribution amounts owed to Federal.