IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FEDERAL INSURANCE COMPANY

    v.

FIREMEN'S INSURANCE COMPANY
OF WASHINGTON, DC, et al.

:    Civil Action No. DKC 09-2361

**MEMORANDUM OPINION**

There is one issue remaining for resolution in this insurance dispute in connection with a motion for summary judgment filed by Federal Insurance Company ("Federal"), which Judge Alexander Williams granted in part. (*See* ECF Nos. 46 & 47).[1] This case concerns a dispute among three insurers regarding their obligation to provide insurance coverage in connection with an arbitration initiated by William Hammerash and his wife against Case Design/Remodeling, Inc. ("Case Design") and its subsidiary Case Handyman Services ("Case Handyman") for deficient performance on a home remodeling contract ("the Hammerash Arbitration"). In orders dated February 9, 2011 (ECF No. 47) and July 11, 2011 (ECF No. 55), Judge Williams requested that Defendants Firemen's Insurance Company ("Firemen's") and Netherlands Insurance Company

---

[1] This case was transferred to the undersigned from Judge Alexander Williams, Jr. on January 17, 2014.

("Netherlands") submit supplemental briefing regarding the extent to which contribution was owed to Federal and the amounts in contribution. The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Netherlands will be ordered to contribute to Federal in the amount of $103,228.61.

## I.   Background

The factual and procedural background of this action was documented in previous opinions, thus only a brief summary of the underlying issues in the case is necessary. (*See* ECF Nos. 46, 54, 67). Federal, Netherlands, and Firemen's are insurance companies. Case Design, operating under the service mark, "Case Handyman," provides home remodeling services. Case Design is Case Handyman's parent company. Case Handyman entered into a franchise agreement on October 15, 2003 with Shaun Arnold, principal of Professional Home Repair ("PHR"), which allowed PHR to conduct business as Case Handyman's franchisee. (*See* ECF No. 29-7).[2] The agreement also gave PHR a license to use the Case Handyman service mark and logo. Netherlands insures Case Handyman, as an additional insured under a policy issued to PHR. (*See* ECF No. 29-6). A condition of the franchise agreement between PHR and Case Handyman required PHR to name Case Handyman

---

[2] The franchise agreement was amended on May 18, 2004 to name PHR as the franchisee instead of Shaun Arnold. (ECF No. 61, at 4).

as an additional insured in Netherlands' insurance policy pursuant to the Commercial General Liability Extension Endorsement, and Case Handyman was so named.

Mr. Hammerash and his wife entered into several contracts with PHR for home remodeling. As a result of alleged performance deficiencies, the Hammerashes brought a complaint in arbitration against Case Design/Remodeling, Inc. on October 5, 2007. (*See* ECF Nos. 29-9, 29-10, 29-13). The Hammerashes thereafter filed an amended complaint in the arbitration proceeding on March 25, 2009, naming Case Handyman as an additional respondent.[3] Case Design and Case Handyman moved for summary judgment on March 13, 2009, arguing, *inter alia*, that the arbitrator should dismiss the Hammerashes' claims because they failed to demonstrate that "the Case franchisee [PHR] who allegedly wronged them was the actual or apparent agent of the Case franchisor." (ECF No. 29-16, at 2). For reasons discussed *infra*, the arbitrator granted the motion in part on June 24, 2009.

Case Design submitted the arbitration for coverage to Federal, its insurance carrier.[4] Case Design also had policies

---

[3] In the amended complaint, the Hammerashes asserted claims for breach of contract, negligence, and a violation of the Maryland Consumer Protection Act. (*See* ECF No. 29-14).

[4] Case Design's insurance policy with Federal defined "insured" as the "insured organization" and any "insured

with other insurance carriers, specifically Firemen's (ECF No. 29-5). Case Handyman sought coverage pursuant to the endorsement clause of a general liability insurance policy issued to PHR by Netherlands. (ECF No. 29-6). Federal argued that pursuant to the insurance policies entered into by Case Design with Defendants in this case, both Netherlands and Firemen's were obligated to provide coverage for, or contribute to, the defense of the Hammerash Arbitration.[5] Both Defendants denied coverage to either respondent in the Hammerash Arbitration.

Consequently, Federal filed a complaint against Firemen's, Netherlands, and Case Design/Remodeling, Inc. on September 9, 2009 (ECF No. 1), and later amended the complaint on April 28, 2010 (ECF No. 32).[6] Federal sought a declaration that Firemen's

---

person." (ECF No. 29-4, at 22). "Insured Organization" in Federal's insurance policy covers the parent corporation, Case Design, and any subsidiary, such as Case Handyman. (*Id.* at 4).

[5] Netherlands disputed that it was required to provide coverage to Case Design because the endorsement clause in the insurance policy only covered Case Handyman – and not Case Design - as an additional insured. (*See* ECF No. 29-6). Judge Williams rejected this argument, holding that "[alt]hough the claims against Case Design may [not be covered] under the Netherlands policy, there is a possibility that claims against Case Handyman (indisputably insured by the Netherlands) are covered, thus triggering the Netherland[s'] obligation to defend the entire suit." (ECF No. 46, at 11).

[6] Although Federal names Case Design/Remodeling, Inc. as a Defendant, it does not appear that Federal seeks any relief from Case Design in the amended complaint.

and Netherlands were obligated to provide insurance coverage for the Hammerash Arbitration (counts I & II) and also asserted a claim for subrogation/contribution to reimburse Federal for the defense costs Federal incurred on behalf of Case Design (and to the extent applicable, Case Handyman) (count III). (*Id.*).

Federal moved for summary judgment, and Firemen's and Netherlands filed cross-motions. (*See* ECF Nos. 29, 38, & 39). Federal argued that its insurance policy with Case Design contained an "other insurance" clause, which obligated Netherlands and Firemen's to provide primary insurance coverage, and required Federal to provide "excess" coverage in instances where all of the insurance providers covered the "same claim." Federal maintained that because Netherlands and Firemen's were required to provide primary coverage for the Hammerash Arbitration, Federal had no duty to provide coverage for the Hammerash Arbitration, as its coverage was excess to claims over $1 million. Judge Williams rejected this argument, but granted in part Federal's motion, holding that although Netherlands was not required to indemnify Federal, it had to contribute to the defense costs of the Hammerash Arbitration. (*See* ECF No. 47 ¶ 2).[7] In the February 9, 2011 memorandum opinion and order, Judge

---

[7] Judge Williams found that Federal's and Netherlands' insurance policies covered Case Design for different risks, and thus did not trigger the "other insurance" provision in Federal's policy that would make Federal's coverage excess to

Williams granted Firemen's cross-motion, holding that Firemen's had no duty to defend the Hammerash Arbitration because its policy was excess to Netherlands' policy. (*Id.* ¶ 3).[8] Thus, Judge Williams dismissed Firemen's from the case in the February 9, 2011 order. He ordered Federal and Netherlands to brief further the issue of the specific amount that should be awarded to Federal from Netherlands for the defense of the Hammerash Arbitration. (ECF No. 46, at 24).

Netherlands and Federal then moved for partial reconsideration. Judge Williams denied Netherlands' motion, but granted in part Federal's motion, finding persuasive Federal's argument that "after supplemental briefings are filed regarding the amount of contribution that the Netherlands owes to Federal, the Court could potentially conclude that the Netherlands' duty to defend ended when the [arbitrator in the] Hammerash

Netherlands' coverage. Specifically, Federal covered Case Design under a Directors and Officers Liability ("D&O) policy, in contrast to Netherlands, which covered Case Handyman (and by extension Case Design) under a Commercial General Liability Policy. (*See* ECF No. 46, at 16).

[8] Judge Williams decided that Firemen's coverage is excess to Netherlands' coverage, pursuant to a provision in Firemen's policy which states that it is excess over any policy "available to [Case Handyman] covering liability for damages arising out of the premises or operation for which you have been added as an additional insured by attachment of an endorsement." (ECF No. 46, at 22). Case Handyman was identified as an 'additional insured' in Netherlands' policy pursuant to an endorsement clause.

Arbitration issued its decision on summary judgment on June 24, 2009." (ECF No. 54, at 8-9).[9] Consequently, Judge Williams ordered that Firemen's be reinstated as a party in the case "pending further briefings from the parties on the contribution amounts that the Netherlands owes Federal." (*Id.* at 9).[10] Netherlands, Federal, and Firemen's submitted supplemental briefs on the contribution issue, the only remaining issue in the case. (*See* ECF Nos. 61-65).

## II. Analysis

Federal asserts that it is entitled to reimbursement for fifty (50) percent of all of the costs it has paid to date in connection with the Hammerash Arbitration, either from Netherlands only or from Netherlands and Firemen's. Federal

---

[9] The arbitration decision issued on June 24, 2009 will be discussed in further detail *infra*. Federal argued that:

> if the Court were to conclude that the Netherlands' duty to defend the Hammerash Arbitration ended after summary judgment was entered in the arbitration, and hence Federal was not entitled to receive contribution from the Netherlands for any defense costs sustained after summary judgment was entered, then Firemen's would be responsible for covering such costs.

(ECF No. 54, at 9). Judge Williams agreed that Firemen's should be reinstated as a party to the litigation pending supplemental briefing on the contribution issue.

[10] Firemen's later requested that Judge Williams reconsider his decision to reinstate Firemen's as a party to the litigation, which he denied. (*See* ECF No. 67).

informs that it has paid a total of $206,457.22 in defense costs in connection with the Hammerash Arbitration.[11] Netherlands maintains that it should only provide coverage up until the point when the arbitrator issued his decision on summary judgment on June 24, 2009. Specifically, Netherlands believes that it is liable to Federal for contribution in the amount of $49,249.00, representing half of the defense costs before the June 24, 2009 decision. (ECF No. 61, at 2).

The Additional Insured Endorsement in Netherlands' insurance policy with PHR states:

> WHO IS AN INSURED is amended to include as an insured any person or organization when [PHR] and such person or organization have agreed in writing in a contract, agreement, or permit that such person or organization be added as an additional insured on your policy to provide insurance such as is afforded under this Coverage Part. Such person or organization is an additional insured only with respect to liability arising out of:
>
> a. *[PHR's] ongoing operations performed for that person or organization.*

(ECF No. 29-6, at 78) (emphasis added). The franchise agreement that Shaun Arnold executed with Case Handyman – which later substituted PHR as the franchisee instead of Mr. Arnold –

---

[11] Although Firemen's objects to the reasonableness of the fees, Netherlands does not challenge the $206,457.22 in total defense costs. As will be seen, Netherlands – and not Firemen's - is liable for fifty (50) percent of the $206,457.22. Thus, any objection by Firemen's to the amount it would have to reimburse Federal is moot.

required Shaun Arnold to name Case Handyman as an additional insured. Case Handyman thus became an additional insured under Netherlands' insurance policy pursuant to the above endorsement clause. The above endorsement clause limited Netherlands' coverage of Case Handyman to liability arising out of PHR's ongoing operations *performed for* Case Handyman. In that regard, Netherlands finds controlling a June 24, 2009 decision from the American Arbitration Association on a motion for summary judgment filed by Case Design and Case Handyman. (*See* ECF No. 29-16). The arbitrator considered Case Design's arguments supporting dismissal of the Hammerashes' action against them on the ground that "[the Hammerashes] have not demonstrated that the Case franchisee [PHR] who allegedly wronged them was the actual or apparent agent of the Case franchisor[, Case Handyman.]" (ECF No. 29-16, at 2). The arbitrator granted summary judgment in favor of Case Design and Case Handyman on the issue of actual authority. The arbitrator reasoned that:

> With regard to the claims of actual
> authority, it must be noted that there have
> been no facts presented or suggested in
> argument or in the exhibits attached to the
> submissions of the parties (including the
> depositions of various individuals) which
> would tend to support the claim that the
> Case franchisee [PHR] with whom [the
> Hammerashes] contracted was operating under
> a grant of *actual authority* from [Case
> Handyman] or that [Case Handyman] had
> sufficient control over the activities of

> Mr. Arnold to subject them to liability for
> those actions.

(*Id.*). The arbitrator further remarked that "[n]o document has been presented to suggest anything other than a franchisor-franchisee relationship." The arbitrator did not find that Case Handyman exercised the requisite level of control over PHR's execution of the home remodeling contract with the Hammerashes to support a direct agency relationship. Accordingly, summary judgment was granted in favor of Case Design and Case Handyman on the issue of *actual authority*.

Although Netherlands characterizes the arbitrator's decision as holding "as a matter of law that the claims against Case Handyman in the Hammerash Arbitration did not arise from work being performed by PHR on behalf of Case Handyman," this is not quite the case. (ECF No. 61, at 5). As Federal and Firemen's both point out, the arbitrator held that there was no evidence to support the claim that PHR was operating under a grant of actual authority from Case Handyman. (*See* ECF No. 63, at 4). What Netherlands fails to address, however, is the second part of the arbitrator's June 24, 2009 decision, in which he explained that "[t]he claims of agency based upon the apparent authority of the franchisee to act on behalf of and bind the franchisor *requires a different analysis and result*." (ECF No. 29-16, at 2) (emphasis added). The arbitrator rejected

Case Design's and Case Handyman's argument that the Hammerashes' claims of agency based upon *apparent authority* should also be dismissed as a matter of law. In so concluding, the arbitrator observed that the contract that the Hammerashes signed for remodeling and repair work on their premises was signed by Case Handyman Services and was on "Case Handyman Services" letterhead. (See ECF Nos. 29-9, 29-10, & 29-16, at 3). The arbitrator also found convincing testimony that "the persons with whom [the Hammerashes] dealt gave them business cards with the Case logo and legend on them and spoke of the long history of the Company and the assurance that [the Hammerashes] and their project would be taken care of no matter what happened." (ECF No. 29-16, at 3). He further stated:

> Although [the Hammerashes] reviewed the web
> site pages upon which [Case respondents]
> rely, [the Hammerashes] testified that they
> did not understand the web site notation
> 'independently owned and operated' to mean
> that the entity with which they were dealing
> [PHR] was separate from the larger Case
> enterprise and that they did enter into
> their contract relying upon what they had
> been told about Case and its history and
> practices by the representatives of the
> franchisee [PHR].

(*Id.*). Accordingly, the arbitrator *denied* summary judgment on the issue of whether PHR operated under a grant of apparent authority from Case Handyman.

Netherlands argues that "any duty on [its] part [sic] to defend [] Case Handyman (and thus per the Court's prior ruling, Case Design) was triggered solely by the possibility that Case Handyman could be found liable for PHR's operations performed on its behalf (*i.e.*, as Case Handyman's agent) and could thus potentially be an additional insured under The Netherlands Policy." (ECF No. 61, at 8). Consequently, Netherlands concludes that:

> once summary judgment was granted to Case Handyman and Case Design as to the actual agency claims, there was no longer the potentiality that they can be found liable for PHR's operations on their behalf, and thus they were no longer additional insureds and no longer entitled to a defense under The Netherlands' Policy.

(ECF No. 61, at 8). But as Firemen's points out, "Netherlands incorrectly interprets [the arbitrator's] finding [regarding actual authority] to mean that PHR was not acting on behalf of Case Handyman." (ECF No. 63, at 4). Indeed, the endorsement clause in the Netherlands Policy does *not* condition coverage of Case Handyman only where PHR's liability arises out of PHR's ongoing operations performed under a grant of actual authority for Case Handyman. *See, e.g., Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F.Supp.2d 641, 649 (D.Md. 2009) ("[i]f the terms used are unambiguous, the meaning of the terms are determined by the court as a matter of law."). Because the endorsement clause

12

leaves open the possibility that PHR may be found liable for ongoing operations performed under a grant of *apparent authority* – a possibility that the June 24, 2009 arbitration decision also left open – Netherlands' construction of the endorsement clause appears to be too narrow. *See, e.g., Bakery and Confectionary Union and Industry Intern. Pension Fund v. New World Pasta Co.*, 309 F.Supp.2d 716, 728-29 (D.Md. 2004) ("[a] corporation is bound by the acts of its agent where those acts are performed by any express grant of power *or within the agent's implied or apparent authority*, unless the agent acted for his own benefit without the corporation's ratification of his action.") (emphasis added). Federal's reading of the endorsement clause, which broadly extends coverage "to any matter based on PHR's 'operations performed for' Case Handyman" is correct. The clause does not limit coverage of Case Handyman for claims based on PHR's status as Case Handyman's direct agent. (*See* ECF No. 62, at 6).

Moreover, "[p]ursuant to Maryland law, apparent authority arises where the purported agent, [] may or may not have actual authority to act for the purported principal, but because of conduct on the purported principal's part the third person believes that the authority to act exists." *Progressive Northern Ins. Co. v. Airborne Express, Inc.*, No. Civ. RDB 03-2987, 2005 WL 1712396, at *10 (D.Md. July 20, 2005) (*quoting*

*Medical Mut. Liability Ins. Soc. Of Maryland v. Mutual Fire,*
*Marine & Inland Ins. Co.*, 37 Md.App. 706, 720 (1977)). "The
principal, either actively or passively, creates a situation
that causes the third person to be misled." *Medical*, 37 Md.App.
at 720. The arbitrator determined that there were "definite
disputes as to material facts concerning the applicability of
the doctrine of apparent authority to the claims by the
[Hammerashes]." (ECF No. 29-6, at 3). This holding undermines
Netherlands' position that after the June 24, 2009 decision,
Case Handyman could no longer have been found liable for work
PHR was performing on its behalf.

Further buttressing Federal's and Firemen's argument that
Netherlands' duty to insure Case Handyman did not cease after
the June 24, 2009 decision is the fact that the summary judgment
decision did not end the case against Case Handyman and Case
Design. As Firemen's points out:

> If we were to accept the Netherlands'
> contention that Case Design's and Case
> Handyman's liability ceased upon a finding
> by the Arbitrator that PHR was not acting on
> behalf of Case Design/Case Handyman with
> actual authority, then the entire Hammerash
> Arbitration would have been resolved as Case
> Design and/or Case Handyman would have had
> no liability at all. However, that was not
> the case. *The Arbitrator held that a*
> *potential claim still existed against Case*
> *Design and/or Case Handyman, not arising out*
> *of their own contract with the Hammerashes,*
> *but instead arising out of the theory that*
> *the Hammerashes believed they were*

14

> *contracting with Case Design/Case Handyman*
> *based on PHR's apparent authority*.

(ECF No. 63, at 5) (emphasis added). In fact, Federal informs that the Hammerash Arbitration has since settled. (ECF No. 62, at 4 n.1). Had the arbitrator's decision negated the potential that Case Handyman could be found liable, there would have been no need to settle with the Hammerashes. *See, e.g., Mitcheson v. Harris*, 955 F.2d 235, 240 (4th Cir. 1992) (noting that under Maryland law, the "duty to defend continues, if actual or potential coverage is established, until such coverage is negated." (*citing 7416 Balt. Ave. Corp. v. Penn-America Ins. Co.*, 83 Md.App. 692 (1990))).

Based on the foregoing, the June 24, 2009 arbitration decision did not relieve Netherlands of the duty to defend and provide coverage in the Hammerash Arbitration.[12] Consequently, Netherlands must contribute to Federal in the amount of $103,228.61, which is fifty (50) percent of the $206,457.22 in

---

[12] Because Netherlands' duty to defend continued beyond the June 24, 2009 summary judgment ruling, the court need not reach the merits of Federal's alternative argument that even if Netherlands were only required to provide contribution until June 24, 2009, Firemen's would then be liable for fifty (50) percent of the costs Federal incurred in defending the Hammerash Arbitration *after* the summary judgment decision.

costs that Federal incurred in defending the Hammerash Arbitration.[13]

## III. Conclusion

For the foregoing reasons, Netherlands will be ordered to contribute to Federal in the amount of $103,228.61. A separate order will follow.

/s/<br>
_____<br>
DEBORAH K. CHASANOW<br>
United States District Judge

---

[13] Federal asserts in its supplemental brief that Netherlands is required to reimburse Federal in the amount of $103,228.61, "and also is required to provide coverage for 50 percent of all *future costs incurred*." (ECF No. 62, at 4) (emphasis added). Federal assures that "[b]ecause the Hammerash Arbitration has settled it is not anticipated that significant costs will be incurred in the future." (ECF No. 62, at 4 n.1). Netherlands, however, argues that its contribution should not exceed $103,228.61.

Federal has not filed any supplemental document indicating how much additional costs it has incurred. Moreover, Firemen's argued in its supplemental brief that "based on the documents provided by Federal on August 15, 2011 evidencing defense costs, this case took from August 2008 to May 2011[] to resolve." (ECF No. 63, at 9). Federal has submitted as an exhibit a spreadsheet prepared by the law firm representing Case Design and Case Handyman in the Hammerash Arbitration, which reflects the attorney fees and other expenses incurred by the firm that Federal paid; the last billing date appears to be June 16, 2011. (*See* ECF Nos. 64-1 & 65-1). In October 2011, Federal submitted its supplemental brief identifying the appropriate contribution amount. The parties have since been instructed to file a joint status report, which they submitted on February 10, 2014. (ECF No. 74). Federal has not alerted the undersigned to any additional costs incurred in connection with the Hammerash Arbitration. Accordingly, judgment will be entered in the amount representing fifty (50) percent of the total costs Federal has identified as having incurred.